**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joel Leon Thomas, Jr., | No. CV-18-02803-PHX-DGC (ESW) |
| Movant/Defendant, | No. CR-12-00523-02-PHX-DGC |
| vs. | (Related Case) |
| United States of America, | |
| Respondent/Plaintiff. | **ORDER** |

Joel Thomas, Jr. is serving 42 years in prison on multiple counts of conspiracy and armed bank robbery in Case No. CR-12-00523. He filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255, a supporting memorandum, and a supplemental memorandum after obtaining counsel. Docs. 1, 2, 36. The government filed a response, to which Thomas replied. Docs. 44, 63. Thomas also filed a second motion for habeas corpus release. Doc. 64.[1]

United States Magistrate Judge Eileen Willett has issued a report recommending that the § 2255 motion be denied ("R&R"). Doc. 68. Thomas objects, and the government has filed a response. Docs. 77, 79. No party requests oral argument. The Court will accept the R&R, deny Thomas's § 2255 motion, and deny the motion for habeas corpus release.

---

[1] Citations to documents filed in this civil action are denoted "Doc." and citations to documents filed in Thomas's underlying criminal case are denoted "CR Doc." Page citations are to numbers attached at the top of pages by the electronic filing system.

1    **I.    Background.**

2         From October 2010 through March 2012, Thomas was employed as a bank teller

3    at a Wells Fargo bank in Sun City, Arizona and then at a Chase bank in Peoria, Arizona.

4    *United States v. Thomas*, 843 F.3d 1199, 1200 (9th Cir. 2016).  In 2011, Thomas and his

5    friend, Billy Brymer, hatched a plan to rob both banks using inside information Thomas

6    obtained during his employment.  *Id.*[2]  The first armed robbery occurred in January 2012

7    at the Wells Fargo branch where Thomas had once worked.  *Id.* at 1201.  The second

8    occurred in February 2012 at the Chase branch where Thomas was then employed.  *Id.*

9    Thomas did not personally commit the robberies, but he planned them, purchased the

10   weapons used, and facilitated the crimes by providing inside information on the banks'

11   security practices and floor plans.  *Id.* at 1200-01.  In March 2014, a jury convicted

12   Thomas of conspiracy and armed bank robbery.  CR Doc. 484.  He received a total

13   sentence of 49.5 years, which the Court later reduced to 42 years.  CR Docs. 703, 706.

14   The Ninth Circuit affirmed the conviction and sentence.  CR Docs. 707, 722.[3]

15        Thomas filed this § 2255 motion in September 2018, alleging ten grounds for

16   relief.  Doc. 1.  Ground one alleges that the government failed to establish that the banks

17   Thomas robbed were FDIC-insured.  *Id.* at 4-10; *see also United States v. James*, 987

18   F.2d 648, 650 (9th Cir. 1993) (requiring the government to "prove that the money taken

19   was from a bank insured by the FDIC").  Ground two alleges that the government failed

20   to "prove[ ] the jurisdictional elements of [his] offenses" by presenting false and outdated

21   FDIC certificates.  Doc. 1 at 4-10.  Ground three claims that the government violated

22   Thomas's Fifth and Fourteenth Amendment rights by suppressing material evidence.  *Id.*

23   _____

24   [2] Thomas also helped plan an unarmed robbery at another Wells Fargo branch in
     February 2012.  *Thomas*, 843 F. 3d at 1201.

25   [3] The Ninth Circuit originally affirmed Thomas's conviction and 49.5-year
26   sentence.  *See Thomas*, 843 F.3d at 1206.  But in light of the Supreme Court's opinion in
     *United States v. Dean*, 137 S. Ct. 1170 (2017) – which held that district courts may
27   consider the impact of a sentence imposed under 18 U.S.C. § 924(c) when calculating a
     just sentence for the predicate count – the Ninth Circuit vacated Thomas's sentence and
28   remanded for reconsideration.  *United States v. Thomas*, 856 F.3d 624 (9th Cir. 2017).  On
     remand, the Court imposed a sentence of 42 years.  Docs. 706, 713.

at 4, 11-13.  Ground four alleges that Thomas was denied effective assistance of trial counsel.  *Id.* at 14-21.  Ground five claims that the government failed to disclose material evidence with respect to a cooperating witness.  *Id.* at 14, 22-23.  Ground six contends that the government violated Thomas's right to equal protection by knowingly using perjured testimony.  *Id.* at 14, 24-27.  Grounds seven through ten challenge the constitutionality of his convictions under 18 U.S.C. § 924(c) and argue that his trial counsel was ineffective for failing to object to defective jury instructions.  *Id.* at 28-34.  Thomas's supplemental memorandum presents a claim of actual innocence.  Doc.36 at 10-11.  Finally, Thomas argues in his reply brief that his sentence violates the First Step Act and the Eighth Amendment's proscription of cruel and unusual punishment.  Doc. 63 at 15.

Judge Willett issued an R&R on December 17, 2020, recommending denial of the § 2255 motion without an evidentiary hearing.  Doc. 68 at 1.   Thomas objects to each of Judge Willett's conclusions with respect to his ten original grounds, his actual innocence claim, and his First Step Act argument.  *See* Doc. 77.

**II.  R&R Standard of Review.**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The Court "must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).  The Court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection."  *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

As discussed more fully below, many of Thomas's objections do not specifically address Judge Willett's ruling.  They simply state an objection and reassert arguments made in the § 2255 motion.  But "merely reasserting the grounds of the petition as an objection provides this Court with no guidance as to what portions of the R&R Petitioner considers to be incorrect."  *McDowell v. Richardson*, No. CV-11-0716-PHX-DGC, 2012 WL 393462, at *2 (D. Ariz. Feb. 7, 2012).  Rule 72 requires more.  The party seeking de

novo review must provide "*specific* written objections to the proposed findings and recommendations" of the magistrate judge. Fed. R. Civ. P. 72(b)(2) (emphasis added). The clear purpose of this requirement is judicial economy – to permit magistrate judges to hear and resolve matters not objectionable to the parties. *See Thomas*, 474 U.S. at 149. Because de novo review of the entire R&R would defeat the efficiencies intended by Rule 72, a general objection has the same effect as a failure to object. *Warling v. Ryan*, No. CV 12-01396-PHX-DGC, 2013 WL 5276367, at *2 (D. Ariz. Sept. 19, 2013); *Eagleman v. Shinn*, No. CV-18-2708-PHX-RM (DTF), 2019 WL 7019414, at *5 (D. Ariz. Dec. 20, 2019); *Quigg v. Salmonsen*, No. CV 18-77-H-DLC-JTJ, 2019 WL 1244989, at *4 (D. Mont. Mar. 18, 2019). As a result, the Court will accept portions of the R&R to which Thomas makes only general objections.

**III.    Discussion.**

**A.    Factual Summary from Ninth Circuit Opinion.**

Thomas first objects to the R&R's factual summary of his case, which was excerpted from the Ninth Circuit opinion on his appeal. Doc. 77 at 2-5. Thomas contends, without citing any authority, that the summary should instead have relied on citations to the underlying factual record. *Id.* at 2. He further objects "to the extent the summary is different from or fails to fully convey the issues as detailed and argued in the pleadings." *Id.* But with one exception, Thomas does not identify specific portions of the summary that are incorrect or contradict the trial record. As the cases cited above demonstrate, these non-specific objections are not effective under Rule 72 and need not be addressed by the Court.

The one exception is Thomas's assertion that the factual summary adopted from the Ninth Circuit incorrectly "rests on the underlying presumption that Mr. Thomas was the master-mind of the three robberies at issue and provided insider information regarding bank procedures." Doc. 77 at 3. But in addition to the fact that this objection is only to an "underlying presumption" in the Ninth Circuit's summary and not to any specific finding by Judge Willett, Thomas does not directly relate this objection to any of

his grounds for relief.  The Court will not reject Judge Willett's factual summary, but its decision will be based on evidence in the record of this § 2255 motion, not on a factual summary from the appellate opinion.

**B.    Grounds One and Two.**

In ground one, Thomas argues that the government failed to present sufficient evidence that the robbed banks were FDIC-insured, a necessary element of the federal crime of bank robbery.  Doc. 1 at 4-10; *see* 18 U.S.C. § 2113; *James*, 987 F.2d at 650.  In ground two, Thomas alleges that the government failed to "prove[] the jurisdictional elements of [his] offenses" by presenting false, invalid, and outdated FDIC certificates. Doc. 1 at 4-10.

Judge Willett concluded that grounds one and two were barred by the law-of-the-case doctrine because they were rejected by the Ninth Circuit on direct appeal.  *See Thomas*, 843 F.3d at 1202 (noting that "[b]ank employees with knowledge of the insurance status testified as to each bank . . . and their testimony was corroborated by each bank's certificate of insurance."); *see also Egger v. United States*, 509 F.2d 745, 748 (9th Cir. 1975) ("Grounds which were apparent on original appeal cannot be made the basis for a second attack under § 2255.").  As Judge Willett recognized, however, courts have discretion to depart from the law-of-the-case doctrine when presented with new evidence or changed circumstances.  *Askins v. U.S. Dep't of Homeland Security*, 899 F.3d 1035, 1043 (9th Cir. 2018).

Thomas claims to provide new evidence in the form of an August 2017 letter, which he characterizes as proof that the FDIC certificates presented at trial were false. Doc. 1-1 at 50.  Judge Willett reviewed the letter and explained in some detail why it does not support Thomas's argument (Doc. 68 at 6-7), but Thomas does not address her reasoning.  He instead simply asserts that "this is a situation . . . involv[ing] new evidence that could change the outcome" of this case and "was not available previously."  Doc. 77 at 6-7.  Because Thomas fails to specify any error in Judge Willett's analysis of the 2017 letter, his objection is ineffective and the Court will accept the R&R as to grounds one

and two.  *Sullivan v. Schriro*, No. CV-04-1517-PHX-DGC, 2006 WL 1516005, at \*2 (D. Ariz. May 30, 2006).

The Court also notes, however, that it agrees with Judge Willett's conclusion that the 2017 letter does not undercut the government's evidence of FDIC insurance.  Doc. 68 at 6-7.  At trial, the government relied on testimony of bank employees and certificates #3511 (Wells Fargo) and #628 (Chase) to show that the robbed banks were FDIC-insured.  Doc. 44-16 at 1-3.  The 2017 letter confirms that the certificates remain in effect.  Doc. 1-1 at 52 ¶ 15 (certificate #3511 still in effect for Wells Fargo), *id.* ¶ 18 (certificate #628 still in effect for Chase).  Grounds one and two will be denied.

## C.    Ground Three – Suppression of Evidence.

Thomas argues that the government unconstitutionally suppressed evidence relating to his "free talks" with FBI Special Agent Lance Leising in March and July 2012.  Doc. 1 at 4, 11-13.  Specifically, he claims that reports of the free talks falsely claim that he confessed to the robberies.  The reports were disclosed to the defense well before trial, but Thomas claims the government did not disclose Leising's handwritten notes from the free talks – notes that he claims "do not match" the reports.  *Id.* at 11.  Thomas asserts that his attorney requested these notes, but Leising said they had been destroyed after the reports were written.  *Id.*  Thomas claims he later obtained the notes in his state case and that they "do not match" the free talk reports.  *Id.*  Thomas argues that the notes should have been produced before trial so he could impeach Leising's testimony.  *Id.*  The Court will reject this claim for two reasons.

First, Judge Willett rejected this claim on the ground that Thomas provided nothing more than self-serving, conclusory allegations to support it.  Doc. 68 at 9.  Thomas fails to make any specific objection to her reasoning.  He instead states only that he "objects to [the R&R's] factual and legal determination" and that he "continues to maintain his claim as asserted in his pleadings."  Doc. 77 at 7.  This does not constitute a specific objection as required by Rule 72, and will be rejected for that reason.

Second and additionally, Judge Willett correctly found that Thomas provides no evidence to support his claim that the government failed to disclose favorable evidence in the form of Leising's handwritten notes.  The free talks were attended not only by Thomas, but also by his defense attorneys at the time, Jeffrey Williams on March 23, 2012, and Anthony Knowles on July 24, 2012.  Doc. 44-20 at 3, 13.  Thomas provides no evidence from these lawyers to support his claim that he did not confess and that the free talk reports are false.  Further, Thomas's trial attorney, Tyrone Mitchell, swears in an affidavit that the defense did not request Leising's handwritten notes and was not told they had been destroyed.  Doc. 44-28, ¶¶ 8, 9.  Most significantly, Thomas does not provide the Court with the handwritten notes he claims to have obtained in his state case.  In short, Thomas provides nothing but his own assertion that Leising's notes exist, were not disclosed, and "do not match" the free talk reports.  Doc. 1 at 11.

What is more, Thomas never explains how the notes do not match the reports.  He does assert that there are "huge factual errors" in the reports, but he identifies only two: that he met with Brymer the night before the Chase robbery and that he met with Jeff Edwards and Daniel Bagley to plan a robbery.  *Id.* at 11.  He never explains what – if anything – the purported notes say about these meetings, and the March 2012 free talk report describes Thomas's participation in weeks of planning for the Chase bank robbery.  Doc. 44-20 at 9-10.

The reports of the free talks are lengthy and detailed.  The report of the March 23, 2012 free talk spans nine single-spaced pages and includes extensive details about the planning and execution of the robberies, including information about the participants.  *Id.* at 3-11.  The report of the July 24, 2012 free talk adds another three pages of details.  *Id.* at 13-15.  Other than the two meetings mentioned above – which do not appear to have been consequential in light of the extensive detail Thomas provided in the free talks about his involvement in the robberies – Thomas provides nothing from which the Court can conclude that the Leising notes, if they exist, would have provided helpful impeachment

material for trial, much less that they would have had any effect on the trial's outcome. Ground three is unsubstantiated, as Judge Willett found.

      **D.**      **Ground Five – Suppression of Evidence.**

Thomas asserts that the government failed to disclose that his friend and codefendant, Billy Brymer, agreed to testify for the government in exchange for a reduced sentence. Doc. 1 at 14. Thomas also asserts that Brymer was cooperating with the government in other criminal cases not involving Thomas, and that he was motivated to testify against Thomas to receive more lenient sentences. *Id.* at 14, 22. Thomas claims that he was never given any documentation related to Brymer's various cooperation agreements – material that could have been used for impeachment and to establish that Brymer was an unreliable witness who would "say anything to get [more lenient sentences]." *Id.* at 22.

Judge Willett correctly found that the record does not support this argument. Before trial, the government disclosed to Thomas's attorney copies of Brymer's proffer agreement with the government, reports of Brymer's free talks, Brymer's presentence report, pages from Brymer's Facebook and Myspace accounts, jail logs of Brymer's phone calls, an FBI report regarding Brymer's jail calls, and 47 compact discs of Brymer's jail calls. Doc. 44-23. Brymer's plea agreement was marked as an exhibit for trial. Doc. 44-25 at 12. While Thomas's counsel could not leave copies of these materials with Thomas at the facility where he was incarcerated, counsel was free to review them with Thomas before trial and attests that he did so. Doc. 44-28 at 2-3.[4]

The jury was given ample opportunity to consider Brymer's motivations for testifying. Defense counsel questioned Brymer at some length about his agreement to

---

[4] Because of reports that Thomas was "outing" codefendants as cooperators to other prison inmates, Thomas's counsel agreed not to leave these materials with Thomas at the jail. *See* Doc. 44-23 at 1. The Court issued a protective order requiring defense counsel to maintain custody of all documents related to potential cooperating witnesses disclosed by the government. Doc. 44-24 at 4.

cooperate with the government, suggesting to the jury that Brymer was implicating Thomas only to achieve a more favorable result for himself.  CR Doc. 613 at 173-78.

Thomas's objection does not address the many documents that were disclosed to his lawyer regarding Brymer's cooperation or the cross-examination of Brymer at trial. He states only that he believes his habeas petition "state[d] a colorable claim" and "continues to maintain that the government failed to disclose material documentary evidence in violation of *Brady*."  Doc. 77 at 7.  The Court agrees with Judge Willett that Thomas's allegations are self-serving and conclusory, and will adopt the R&R's conclusion as to ground five.[5]

### E.     Ground Four – Ineffective Assistance of Counsel.

Thomas presents several ineffective assistance of counsel claims.  Doc. 1 at 14-21. To prevail on such a claim under the Sixth Amendment, Thomas must show both deficient performance and prejudice – first, that counsel's representation fell below an objective standard of reasonableness, and second, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 686-88, 694 (1984).  Thomas has the burden of proving these elements and must overcome a "strong presumption that the representation was professionally reasonable."  *Id.* at 689.

Additionally, and of particular relevance in this case, "[a] habeas petitioner may not establish ineffective assistance by simply alluding to potential evidence."  *United States v. Self*, 100 F. Supp. 3d 773, 803-04 (D. Ariz. 2015) (citing *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997)).  It is not enough to speculate about what a witness's

---

[5] Thomas requests an evidentiary hearing on this and other issues, but the Court is not required to grant such a hearing when the record is sufficient to show conclusively that a petitioner is not entitled to habeas relief.  *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004).  The record in this case is extensive.  The government has submitted more than 2,300 pages of supporting materials (Doc. 44) and Thomas has submitted more than 700 pages (Docs. 1, 36).  For reasons explained in this order, the record shows that Thomas's claims are unfounded, and he cannot obtain a hearing simply by claiming that something additional might be found through possible hearing testimony.  "An oral hearing is not necessary in all cases."  *United States v. Rodriguez-Vega*, 797 F.3d 781, 791 (9th Cir. 2015).

testimony might be.  A petitioner "must adduce evidence to show what it would have been."  *Id.*  As other circuits have noted, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witnesses would have testified are largely speculative[.]"  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  Evidence about the testimony of a putative witness therefore "must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

### 1.    Counsel's Failure to Call Key Witnesses.

Thomas argues that his trial counsel was ineffective for failing to call nine witnesses.  Doc. 1 at 14-21.  These include: (1) four robbery participants and codefendants who purportedly told police that Brymer, not Thomas, was the ringleader behind the crimes; (2) three of Brymer's friends who confirmed that he masterminded the robberies and would have done so regardless of Thomas's involvement; (3) a private investigator with knowledge that Agent Leising had made misleading statements in a previous case; and (4) a cell phone expert who was retained by the defense but never testified, and could have cast doubt on the government's allegation that Thomas was near the banks at the time of the robberies.

Judge Willett reviewed each of these witnesses and found that Thomas's contention regarding their potentially favorable trial testimony was speculative and insufficient for habeas relief.  Doc. 68 at 10-13.  In response, Thomas makes only this vague objection:

> None of these witnesses were in fact presented at trial. Thus, the record supports Joel's assertions. This is not a situation where Joel is attacking how well his attorney performed in presenting and examining these witnesses, but instead it is a situation where the attorney completely failed to call any of the witnesses, and Joel has detailed the reasons why each of the witnesses was critically important to his defense. (See Doc. # 1, and 2.)

Joel, thus, continues to maintain that his ineffective assistance of counsel claims support a reversal of his convictions, and he objects to the Magistrate's conclusions to the contrary.

Doc. 77 at 10.

This objection does not address any of Judge Willett's reasons for rejecting this claim, and therefore is an insufficient objection under Rule 72. The R&R will be accepted for this reason.

In addition, Thomas fails to address key deficiencies in his arguments about these nine witnesses.

- Judge Willett notes that witnesses Jillian and Daniel Bagley affirmed in their plea agreements that Thomas was involved in the robberies, contrary to his assertion that they would exonerate him. Doc. 68 at 10-11.

- David McQueen and Kenneth Brown were homeless men Brymer hired to commit one of the bank robberies. *See Thomas*, 843 F.3d at 1200-01; Doc. 1 at 15-16. The evidence at trial, and the government's theory of the case, was that these individuals did not interact with Thomas. Doc. 44 at 25 (citing to transcripts). The fact that they could not incriminate Thomas, as he claims (Doc. 1 at 15), therefore would add little to the defense.

- Thomas's suggestion that Alex Pritchett, Darrell Sterner, and Miguel Castillo would have provided helpful testimony is purely speculative. *See* Doc. 1 at 16-18. Thomas himself characterized these men as individuals similar to McQueen and Brown who were willing to commit crimes for money, and all three were charged with Thomas in state court for committing fraudulent schemes. Docs. 44-20, 44-21. And their unproven willingness to testify that Brymer committed various crimes, even if correct, would add little to the evidence of Brymer's wrongdoing that was presented at trial. Brymer himself testified that he committed immigration fraud, committed crimes with Miguel Castillo, and lied "tons of times." CR Doc. 613 at 154-55, 171, 173.

11

- Thomas suggests that a private investigator would have testified that Leising lied in a previous case, resulting in the suppression of evidence.  Doc. 1 at 17. But the case Thomas cites resulted in the suppression of evidence because Leising failed to give an adequate Miranda warning, not because he lied. Doc. 1-4 at 51-52.  Failure to give a sufficient warning does not necessarily suggest dishonesty.

- Thomas contends that his counsel should have called a cell phone expert, but as Judge Willett noted, he fails to identify the expert.  Doc. 68 at 13.  Thomas asserts the expert would have cast doubt on the government's expert evidence placing his phone near two bank robberies, but Thomas himself testified that he was near the banks when the robberies occurred (Doc. 44 at 26-27 – citing transcripts), so it is not clear what benefit he could have obtained from such a cell phone expert.

In summary, Thomas falls far short of the standard required to prove ineffective assistance of counsel based on a failure to call witnesses.  It is not enough to speculate about what a witness's testimony might have been.  A defendant "must adduce evidence to show what it would have been." *Self*, 100 F. Supp. 3d at 803-04; *see also Ashimi*, 932 F.2d at 650; *Grisby*, 130 F.3d at 373.  Thomas has adduced no evidence showing that the testimony of his nine witnesses would have been favorable to his case.  The Court will accept Judge Willett's recommendation for this reason as well.

### 2. Failure to Conduct Adequate Pretrial Work and Investigation.

Thomas also argues that his trial counsel "never conducted any pretrial investigation," including research into the validity of the FDIC certificates.  Doc. 1 at 15. He alleges that his counsel failed to conduct "a single pretrial interview" or present relevant exculpatory evidence at trial, including a jail cell call – discussed further below – in which Brymer stated "time and time again" that Thomas was not involved in the bank robberies.  *Id.* at 18.

12

The record indicates that trial counsel met with Thomas on multiple occasions, had an investigator do the same, and enlisted associate defense counsel to meet with Thomas and assist in the trial preparation.  Doc. 44-28 at 2-3.  Counsel reviewed with Thomas the impeachment material he received from the government, including copies of Brymer's jail calls.  *Id.* at 2.  He warned Thomas that he could be cross-examined at trial on statements he had made in his free talks with law enforcement and urged Thomas not to testify at trial – advice Thomas ignored.  *Id.*  Counsel filed pre-trial motions on behalf of Thomas and made a motion for acquittal near the end of trial.  *See, e.g.*, CR Docs. 358, 481.

As Judge Willett noted, the *Strickland* standard places the burden on Thomas, not the government, to show a "reasonable probability" that the result of his trial would have been different if counsel had investigated the case differently.  *Srickland*, 466 U.S. at 694.  Thomas makes no such showing.  His allegations are based on his "own self-serving statement[s]."  *Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (ineffective assistance of counsel claim denied where, aside from a self-serving statement which contradicted other evidence in the record, defendant provided no evidence to support his claim).  His primary complaint is that Mr. Mitchell – his sixth attorney in the criminal case – did not pursue the trial strategy Thomas deemed appropriate.  But "[m]ere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation."  *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).

Mr. Mitchell avows that he listened to all of Thomas's ideas and pursued only trial strategies he deemed appropriate given his experience and ethical obligations.  Doc. 44-28 at 2.  Thomas has not shown that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687, 689.

**F.    Ground Six—Equal Protection Violation.**

Thomas argues that the government "violated his Fourteenth Amendment right to equal protection" by allowing Brymer to commit perjury at trial.  Doc. 1 at 14.  While

Thomas frames this argument as an equal protection claim, it essentially is an extension of his nondisclosure and ineffective assistance of counsel claims. First, Thomas alleges that the government violated its disclosure obligations by failing to correct Brymer when he perjured himself at trial. Doc. 1 at 24; *see also Hooper v. Shinn*, 985 F.3d 594, 616 (9th Cir. 2021) (noting that *Brady* applies where "the undisclosed evidence shows that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury."). Second, Thomas alleges that his trial counsel provided ineffective assistance by not calling witnesses to undercut Brymer's testimony and by failing to object to Brymer's perjured testimony on the record, thus waiving the issue on direct appeal. Doc. 1 at 25.

### 1. Brymer's Alleged Perjury.

"The knowing use of perjured testimony by a prosecutor generally requires that the conviction be set aside." *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)). The use of perjured testimony justifies habeas relief where there is a "reasonable probability that without all the perjury the result of the proceeding would have been different." *Id.* (internal citations omitted).

Thomas argues that Brymer committed perjury when he denied that he committed prior bank robberies with Miguel Castillo, a codefendant in the charged crimes. CR Doc. 613 at 184; Doc. 44-21 at 2. Thomas contends that this denial contradicted several pieces of evidence about which the government was well aware, including: (1) Castillo's police statement, in which he admitted committing a November 2011 bank robbery involving Brymer; and (2) the police statements of several other participants in the charged crimes, who confirmed that Brymer had past experience with bank robberies but had never been caught.[6] Doc. 1 at 24-26. Had Brymer's past criminal history been revealed at trial, Thomas argues, the jury would have known that Brymer could have committed the

---

[6] Castillo admitted to committing the November 2011 robbery after being shown an FBI bulletin with photos of the incident. Docs. 1-2 at 8; 1-5 at 12. Thomas cites the bulletin as evidence that the government and FBI knew of the robbery. Doc. 1 at 24.

charged crimes without Thomas's involvement.  *Id.* at 26.  Thomas further claims that the jury would have afforded less weight to Brymer's testimony had it known that Brymer was "required to testify" to receive a more lenient sentence.  *Id.* at 27.

The Court cannot conclude that Thomas's claim justifies habeas relief.  This is not a case where the Court reasonably can conclude that Brymer gave perjured testimony.  *See Killian*, 282 F.3d at 1208.  It is true, as Thomas notes, that Castillo told police that Brymer threatened him into committing a bank robbery in November 2011.  Doc. 1-2 at 8.  But Castillo contradicted himself several times in his police statement, and when asked to provide details about the robbery, Castillo stated that he could not recall and must have "blacked out."  *Id.* at 7-8.  Further, while several codefendants discussed Brymer's involvement in the robberies and his past criminal conduct, these witnesses were themselves involved in the crimes and cannot be considered particularly reliable sources.  Doc. 1-4 at 47-49.

As also indicated above, the jury knew of Brymer's cooperation agreement with the government.  Thomas's counsel cross-examined Brymer at some length on the incentive it provided for him to testify against Thomas.  CR Doc. 613 at 173-78.

### 2.    Prejudice.

Nor can the Court conclude that, without the alleged perjury, "the result of the proceeding would have been different."  *Killian,* 282 F.3d at 1208 (citations omitted).  Thomas's main contention is that if the jury knew Brymer had already committed bank robberies it would have known Brymer could have committed the charged crimes without Thomas's involvement.  Doc. 1 at 26.  But this modest fact, even if believed by the jury, would not show whether Thomas was involved in the charged crimes.  An individual who commits a bank robbery with Castillo would be equally capable of committing a bank robbery with Thomas.  And the fact Thomas seeks to show – that Brymer could commit a bank robbery on his own – would not be a surprise to the jury given Brymer's criminal history, testimony, and demeanor, and would not likely have affected the trial result.

15

Thomas also contends that evidence of Brymer's criminal past could have been used to impeach his testimony, undermine his credibility, and shed light on his motivation to testify. For several reasons, the Court does not agree that the impeachment would have been as impactful as Thomas suggests.

First, the jury knew Brymer's criminal history. He admitted on direct examination that he planned and participated in all the charged bank robberies. CR Doc. 613 at 6. He testified that he told codefendant Ernest Lerma that he had committed past bank robberies in other states. CR Doc. 610 at 244. Lerma confirmed this during his testimony, and Thomas's counsel emphasized it during closing argument. CR Docs. 611 at 58-59; 618 at 132 ("[Brymer] is rotten to the core . . . [h]e had told people over and over, far before [Thomas came] into the picture, that he had robbed banks in Arizona, New Mexico, and California.").[7] Brymer also testified that he was in debt, sold and used illegal substances, married a woman in exchange for money so she could avoid deportation, and lied regularly. CR Docs. 612 at 80-84, 613 at 173.

Second, the jury knew that Brymer had a self-interested motive for testifying. The defense vigorously cross-examined him about his cooperation agreement, suggesting it required Brymer to "make the government happy" in order to "get a favorable result." CR Doc. 613 at 172. Brymer admitted that one of his motivations was his hope of a reduced sentence. CR Doc. 612 at 71. Additionally, in a recorded phone call Brymer made from jail in May 2012, he and Lerma discussed the possibility of Brymer receiving a more lenient sentence by claiming that Thomas had coerced him into committing the robberies – despite Brymer declaring, on the same call, that Thomas had "nothing to do" with the charged crimes. CR Docs. 613 at 158-61, 167-70; 611 at 55.[8]

---

[7] Brymer testified that he lied to Lerma about his past robbery experience so Lerma wouldn't be nervous about assisting him with the charged crimes – a claim he undoubtedly would have made regardless of the cross-examination's scope. CR Doc. 612 at 85.

[8] Thomas argues that his trial counsel was ineffective for not playing this jail call for the jury. *See* Doc. 1 at 18. But Brymer was questioned about his statement during the

Third, the jury received evidence calling into question Brymer's character, reliability, and credibility as a witness.  Lerma testified that Brymer encouraged him to deny knowledge of the robberies to law enforcement.  CR Doc. 612 at 82.  Brymer acknowledged that he had committed hundreds of pretrial release violations, lied to his mother about the robberies, and lied "hundreds" of times to avoid criminal liability.  CR Doc. 613 at 172-73.  At one point, Brymer admitted that there was "no way" for the jury to assess whether he was being truthful given his history of lying.  *Id.* at 173.

In sum, the jury fully understood that Brymer had a criminal history, a propensity to lie, and a self-interest in testifying against Thomas.  The testimony Thomas claims, but has not shown, to be perjurious – Brymer's denial of the November 2011 robbery with Castillo – does not entitle Thomas to habeas relief.  Thomas has not shown a "reasonable probability" that the trial result would have been different without this denial by Brymer.  *Killian*, 282 F.3d at 1208.

For the same reasons, Thomas has not established an ineffective assistance claim based on trial counsel's failure to object to Brymer's testimony on the record or call Castillo as a witness.  *Strickland*, 466 U.S. at 694.

### G.    Grounds Seven through Ten – § 924(c) Convictions.

In grounds seven through ten, Thomas challenges the constitutionality of his convictions under 18 U.S.C. § 924(c), which requires long prison sentences for those who use a firearm in a federal "crime of violence."  Doc. 1 at 28-34; *see also* 18 U.S.C. §§ 924(c), 2113.

### 1.    Ground Nine – Crime of Violence.

Thomas argues that the predicate crime upon which his § 924(c) conviction was based – aiding and abetting armed bank robbery – does not qualify as a crime of violence.  Doc. 1 at 28.  Section 924(c) defines a "crime of violence" as:

---

call that Thomas was not involved in the robberies, and claimed that it was one of many falsehoods he concocted to "get out" of his charges while avoiding implicating anyone else.  CR Docs. 611 at 55, 613 at 182.

1   an offense that is a felony and—

2   (A) has as an element the use, attempted use, or threatened use of physical
3   force against the person or property of another, or

4   (B) that by its nature, involves a substantial risk that physical force against
5   the person or property of another may be used in the course of committing
    the offense.

6
7   18 U.S.C. § 924(c)(3).

8       In 2019, the Supreme Court held that subsection (B), known as the "residual
9   clause," was unconstitutionally vague.  *See United States v. Davis*, 139 S. Ct. 2319
10  (2019).   Thomas argues that his convictions cannot be sustained after *Davis*.   Judge
11  Willett rejected this argument, noting that Thomas's predicate crimes are still "crimes of
12  violence" under subsection (A) of the statute – known as the "elements" or "force" clause
13  – because, even in its least violent form, federal bank robbery requires an implicit threat
14  to use physical force.  Doc. 68 at 15.

15      Thomas makes no specific objection to this conclusion.   He repeats his *Davis*
16  argument and states that he "continues to maintain he is entitled to reversal and relief as
17  argued throughout his pleadings and supported by the record[.]"  Doc. 77 at 12.  Because
18  this does not constitute a specific objection under Rule 72, the Court will accept the
19  R&R's recommendation that this claim be denied.

20      The Court also notes that ground nine fails on the merits.   In *United States v.
21  Watson*, 881 F.3d 782 (9th Cir. 2018), the Ninth Circuit explained that federal bank
22  robbery in violation of § 2113(a) "qualifies as a crime of violence [within the meaning of
23  § 924(c)] because even its least violent form 'requires . . . an implicit threat to use the
24  type of violent physical force necessary to meet the *Johnson* standard.'"  *Id*. at 785.
25  Thus, "armed bank robbery under § 2113(a) and (d) qualifies as a crime of violence under
26  § 924(c)."  *Id*. at 786.   While it is true that Thomas did not personally commit crimes of
27  violence, the jury found him guilty of aiding and abetting the robberies, and an aider and
28  abettor is punishable as a principal.  18 U.S.C. § 2 ("Whoever commits an offense against

18

the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007) (noting that every state and the federal government "has expressly abrogated the distinction among principals and aider and abettors" who were present at the scene or helped the principal prior to the crime). And because bank robbery qualifies under the force clause of § 924(c)(3)(A) as a crime of violence, "so does aiding and abetting armed bank robbery." *Johnson v. United States*, 774 F. App'x 334, 335 (8th Cir. 2019); *see also Kidd v. United States*, 929 F.3d 578, 581 (8th Cir. 2019) (per curiam) (aider and abettor is treated same as principal when determining whether offense qualifies as crime of violence under § 924(c)(3)(A)); *United States v. Garcia-Ortiz*, 904 F.3d 102, 109 (1st Cir. 2018) (an aider and abettor is "no different for purposes of the categorical approach than one who commits the substantive offense").[9]

The Court accordingly finds that Thomas's convictions for aiding and abetting armed bank robbery constitute crimes of violence under § 924(c)(3)(A). Ground nine fails on the merits.[10]

## 2.    Grounds Seven, Eight, and Ten – Jury Instructions.

As discussed above, § 924(c) prohibits the using, carrying, or brandishing of a firearm during and in relation to a crime of violence. In ground ten, Thomas alleges that

---

[9] Thomas also claims that the Court erred by giving a *Pinkerton* jury instruction with respect to the predicate crime of conspiracy to commit armed bank robbery (Counts 1, 4, and 6), which Thomas contends is not a crime of violence under § 924(c). Doc. 2 at 10; *see also* Doc. 77 at 15. While the R&R did not address Thomas's *Pinkerton* argument, the Court does not agree with the argument. The Ninth Circuit has made clear that "armed bank robbery . . . does have violence as an element," and that "Defendants found guilty of armed bank robbery under either a *Pinkerton* or aiding-and-abetting theory are treated as if they committed the offense as principals." *United States v. Henry*, 984 F.3d 1343, 1355-56 (9th Cir. 2021). The Ninth Circuit "has repeatedly upheld § 924(c) convictions based on accomplice liability . . . [and] have continued to affirm convictions that may have been based on a *Pinkerton* theory in unpublished decisions after *Davis*." *Id.* at 1356.

[10] Judge Willett also concluded that ground nine is procedurally defaulted because Thomas failed to raise it on direct appeal. Doc. 68 at 16. Because this ground fails on the merits, the Court elects not to address procedural default. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (recognizing that judicial economy may merit addressing an easily-resolvable habeas claim on its merits before resolving a procedural bar issue).

the government violated his due process rights by not requiring, in the jury instructions, that the jury consider whether he had "advance knowledge" that a firearm would be brandished during the bank robberies.  Doc. 2 at 12.  In grounds seven and eight, he argues that his counsel was constitutionally ineffective for failing to object to the jury instructions.  *Id.* at 28-30.

In *Rosemond v. United States*, 572 U.S. 65 (2014), the Supreme Court held that aiding and abetting a § 924(c) violation requires proof that the defendant "actively participated in the underlying . . . violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission."  *Id*. at 67.  The jury instruction at issue in *Rosemond* allowed the jury to convict if it found that the defendant: (1) "knowingly and actively participated in the drug trafficking crime" and (2) "knew his cohort used a firearm in the drug trafficking crime[.]"  *Id.* at 82.  This instruction was deficient because it "failed to require that the defendant knew *in advance* that one of his cohorts would be armed."  *Id.* (emphasis added).  Thomas claims that his § 924(c) instructions (Instruction Nos. 26-27) were defective for the same reason – they did not contain an express "advance knowledge" requirement.  Doc. 1 at 32-33.[11]

The government counters that the instructions were not defective and in fact were based on a Ninth Circuit model instruction to which Thomas never objected.  Doc. 44 at 20.  The government further argues that this claim is procedurally defaulted because Thomas never raised it on direct appeal.  *Id.*  Judge Willett agreed on both points.  In his objections, Thomas largely reiterates his habeas petition.[12]

_____

[11] Thomas also argues that the Court erred by failing have the jury find that he was guilty of a violent crime.  Docs. 1 at 33; 26 at 15.  But the jury found him guilty of aiding and abetting bank robbery, as discussed above, and whether an offense is a "crime of violence" is a question of law that "obviate[es] the need for fact finding by the jury." *United States v. Amparo*, 68 F.3d 1222, 1224 (9th Cir. 1995).  While "[t]he jury must find the facts underlying the charged offense, . . . the court determines whether that category of offense is a crime of violence."  *Id.*

[12] Thomas also argues that the Ninth Circuit's categorical approach to determining which offenses constitute crimes of violence is unjust and unconstitutional because it fails to consider the specifics of his case – namely, that he was not present at one of the

The Court agrees with Judge Willett.  The jury instructions made clear that the government needed to prove each of the following elements beyond a reasonable doubt:

> First, the crimes of Use or Carrying of a Firearm During and in Relation to Armed Bank Robbery as charged in Counts 3 and 8 were committed by someone.  The elements of this crime are set forth below.

> Second, the defendant knowingly and intentionally aided, counseled, commanded, induced or procured the person or persons to commit each element of Use or Carrying of a Firearm During and in Relation to Armed Bank Robbery.

> Third, the defendant acted *before the crimes of Use or Carrying of a Firearm During and in Relation to Armed Bank Robbery as charged in Counts 3 and 8 were completed.*

> It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime.  *The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit Use or Carrying of a Firearm During and in Relation to Armed Bank Robbery.*

> As noted above, the government must prove that someone committed the crime of Use or Carrying of a Firearm During and in Relation to Armed Bank Robbery as charged in Counts 3 and 8.  To prove this, the government must prove each of the following elements beyond a reasonable doubt:

> First, a person committed the crime of Armed Bank Robbery at issue in Counts 2 and 7 of the indictment.  Count 3 relates to the Armed Bank Robbery at issue Count 2.  Count 8 relates to the Armed Bank Robbery at issue in Count 7.

> Second, a person knowingly used or carried or brandished the handgun during and in relation to the Armed Bank Robbery at issue in Counts 2 and 7.

Doc. 44-17 at 31 (emphasis added).

---

robberies, committed no violence himself, and did not brandish or possess a weapon. Doc. 77 at 16-17.  The Ninth Circuit has recognized that the categorical approach "is in contrast to the circumstantial or case-by-case method that requires the district court to inquire into the facts of the particular case."  *United States v. Mendez*, 992 F.2d 1488, 1490 (9th Cir. 1993).  But the Ninth Circuit has accepted, as it must, the framework Congress established for § 924(c).  *See Amparo*, 68 F.3d at 1225 (noting that "[t]he legislative history to section 924(c) indicates that Congress intended to use a categorical approach to the 'crime of violence' language.") (citations omitted).

21

Unlike the instruction in *Rosemond*, this instruction made clear the government's burden to prove that: (1) Someone committed the crime of using or carrying a firearm during and in relation to armed bank robbery, which required the knowing use, carrying, or brandishing of a firearm; (2) Thomas knowingly and intentionally aided in the commission of this firearm offense; and (3) Thomas provided this aid before the firearm offense was complete and with the knowledge and intent of helping the person commit the firearm offense.  The government could satisfy the third element only if Thomas "knew in advance that one of his cohorts would be armed" as required by *Rosemond*. 572 U.S. at 82.  The Court accordingly concludes that the instructions were not erroneous under *Rosemond* and that Thomas's trial counsel was not ineffective in failing to object to them.  *See Strickland*, 466 U.S. at 687-88.

The Court also finds that the arguments in grounds seven, eight, and ten are procedurally defaulted.  *Rosemond* was decided, and the jury instructions were given, in March 2014.  CR Doc. 483; *Rosemond*, 572 U.S. 65.  These arguments clearly could have been raised in Thomas's direct appeal, but were not.  And given that the jury instructions complied with *Rosemond* as discussed above, Thomas cannot show the prejudice required for relief from procedural default.  *United States v. Braswell*, 501 F.3d 1147, 1149-50 (9th Cir. 2007).

The Court will dismiss grounds seven, eight, and ten.

**H.    Actual Innocence Claim.**

In his supplemental memorandum, Thomas makes what appears to be an actual innocence claim.  Doc. 36 at 9.  In the R&R, Judge Willett concluded that while freestanding actual innocence claims may be cognizable in § 2255 habeas review, Thomas failed to meet the "extraordinarily high" bar for such a claim because he never proffered "any new reliable evidence" to support his claim.  Doc. 68 at 18-19.  Thomas objects that "new evidence" is not required to make an actual innocence claim and that "the facts and law as detailed . . . in prior pleadings" establish that he is innocent and –

were his trial not constitutionally defective – no reasonable juror would have convicted him of the crimes of which he was accused.  Doc. 77 at 19.

To establish an actual innocence claim, Thomas must "affirmatively prove that he is probably innocent," *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc), and yet he presents no evidence of actual innocence.  He instead largely incorporates by reference his previous due process arguments.  Doc. 36 at 9-10.  Because Thomas fails to present evidence of actual innocence and the Court does not find that his constitutional rights were violated, the Court will adopt the R&R's recommendation and deny his actual innocence claim.

## I.     First Step Act and Eighth Amendment.

Thomas claims that his § 924(c) sentences violate the Eighth Amendment's prohibition on cruel and unusual punishment in light of the First Step Act, which changed the sentencing structure of § 924(c).  Doc. 63 at 8.  The Court will deny this argument because it was raised for the first time in Thomas's reply brief and therefore is untimely. *Id.*; *Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (per curiam); *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006).

The Court also finds that this argument lacks merit.  The original version of the statute provided for a 25-year mandatory minimum and consecutive sentence for a second or later § 924(c) conviction, even where all the defendant's § 924(c) convictions arose in the same case.  *See* 18 U.S.C. § 924(c)(i) (2018).  In December 2018, Congress amended the statute so that the 25-year mandatory minimum applies only after a § 924(c) conviction has become final in an earlier case.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5221-22 (2018).  This "resulted in not just any sentencing change, but an exceptionally dramatic one," creating an "enormous disparity between [the original § 924(c) sentence] and the sentence a defendant would receive today[.]" *United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020).  Thomas argues that this sentencing disparity mandates reversal of his convictions.  Doc. 63 at 15.

Judge Willett correctly rejected this argument, noting that Congress declined to make the First Step Act's elimination of sentence-stacking retroactive. First Step Act § 403(a), 132 Stat. at 5222. Because Thomas was sentenced well before the Act was passed in December 2018, its amendments do not apply. Judge Willett further noted that Thomas's Eighth Amendment claim was barred by the law-of-the-case doctrine because he had already litigated that issue before the Ninth Circuit. Doc. 68 at 20.

Thomas objects that district courts have discretion to apply the Act retroactively given the "extraordinary and compelling" sentencing disparities created by the First Step Act. Doc. 77 at 20-21 (citing cases). The cases Thomas cites, however, all involve motions for compassionate release, not habeas petitions. *Id.* In the compassionate release setting, several courts have held that district courts may consider the "extent of the disparity between [a defendant's original sentence] and those provided for under the First Step Act" in considering whether "extraordinary and compelling reasons" exist for compassionate release. *McCoy*, 981 F.3d at 286; *see also United States v. Aruda*, 993 F. 3d 797, 801 (9th Cir. 2021). But this is a habeas petition, not a motion for compassionate release. The First Step Act does not mandate reversal of Thomas's convictions as habeas relief.[13]

**IT IS ORDERED:**

1.      Judge Willett's R&R (Doc. 68) is **accepted**.

2.      Thomas's § 2255 motion (Doc. 1) is **denied.**

3.      The Court will not issue a certificate of appealability because, for reasons explained above, Thomas had not made a substantial showing of the denial

---

[13] As part of the First Step Act, Congress amended the compassionate release statute, 18 U.S.C. § 3582(c), to remove the Bureau of Prisons as the sole arbiter of whether a defendant's circumstances qualify as "extraordinary and compelling" for purposes of compassionate release. Pub. L. No. 115-391, Title VI, § 603(b)(1), § 3582, 132 Stat. 5194, 5239 (2018). A defendant may now seek a sentence reduction directly from the district court for "extraordinary and compelling reasons," provided he first seeks a reduction from the Bureau of Prisons and that request is either denied or 30 days have passed. *See id.* Thomas has not followed this procedure. If he does, these arguments may be available to him. The Court expresses no opinion on the result that would occur in such a case.

of a constitutional right, a point on which reasonable jurists could not disagree.  28 U.S.C. § 2253(c)(2).

4.    Thomas's motion for habeas corpus release (Doc. 64) is **denied as moot**.

5.    The Clerk is directed to terminate this action.

Dated this 25th day of May, 2021.


David G. Campbell
Senior United States District Judge