**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>v.<br><br>Joel Leon Thomas, Jr.,<br><br>            Defendant. | No. CR-12-00523-002-PHX-DGC<br><br>**ORDER** |

Defendant Joel Thomas is serving a 42-year sentence on multiple counts of conspiracy, bank robbery, and brandishing a firearm during crimes of violence. *See* Doc. 706. He moves to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1). Doc. 732. The motion is fully briefed (Docs. 736, 741), and oral argument will not aid the Court's decision. For reasons stated below, the Court will deny the motion.

**I.     Background.**

In early 2012, Thomas and his friend Billy Brymer committed three bank robberies, two of them armed. Thomas and Brymer began planning the robberies in 2011. Thomas provided inside information on the banks (where he worked or had worked), including their security practices, floor plans, available cash, and customer activity. Brymer recruited two homeless men, McQueen and Brown, as well as two men from California, Bagley and Edwards, to assist in the robberies.

The first robbery occurred on January 21, 2012, at a Wells Fargo bank in Sun City, Arizona. Bagley and Edwards participated in the robbery, according to Thomas's plan. After entering the bank, Edwards pointed a gun at a bank employee and demanded access to the vault. No manager was available to open the vault, so Edwards demanded money from the tellers and came away with about $7,200. Edwards then fled to the parking lot where he was joined by Brymer and Bagley. While the robbery was taking place, Thomas was positioned nearby as a lookout for police.

The second robbery occurred on February 25, 2012, at a Wells Fargo bank in Surprise, Arizona. With Thomas's help, Brymer wrote the demand note that McQueen gave to the teller, who handed over nearly $1,700. After the robbery, McQueen and Brown, who had stayed outside as a lookout, met with Thomas and Brymer and divided the money.

The third robbery occurred on February 29, 2012, at a Chase bank in Peoria, Arizona, where Thomas was then working. Thomas chose that day because he knew the vault would contain a large amount of cash. As Thomas and the manager were opening the bank, Brymer forced his way inside, pointed a gun at the manager, and demanded money. Thomas did nothing to help his manager, ensuring Brymer would gain entry to the bank and the vault. Brymer left with more than $245,000, which he and Thomas planned to split evenly. *See* Doc. 736 at 3-4 (citations omitted); Doc. 740 ¶¶ 17-19 (presentence report); *United States v. Thomas*, 843 F.3d 1199, 1200-01 (9th Cir. 2016).

After his arrest, Thomas spoke to agents and admitted his role in planning the robberies and purchasing weapons. The government charged Thomas with three counts of conspiracy to commit bank robbery, two counts of armed bank robbery, and one count of bank robbery in violation of 18 U.S.C. §§ 371 and 2113(a). Doc. 458 (Counts 1-2 and 4-7). For the armed robberies (Counts 2 and 7), Thomas also was charged with brandishing a firearm during a crime of violence under 18 U.S.C. § 924(c) (Counts 3 and 8). *Id.*

Thomas rejected the government's plea offer of 14-18 years and exercised his right to a jury trial. *See* Doc. 259. A nine-day trial was held in March 2014. *See* Docs. 469-84. Thomas took the stand and perjured himself by making statements directly contrary to his

2

previous statements to the government, the testimony of cooperating witnesses (including Brymer), and the evidence against him. *See* Doc. 740 ¶ 42. The jury convicted Thomas on all counts. Doc. 488.

In September 2014, the Court sentenced Thomas to a 49.5-year prison term. Docs. 537, 541. For the conspiracy and robbery convictions, Thomas received a total sentence of 17.5 years (210 months), the low end of the applicable Guidelines range. Doc. 541 at 1.[1] The § 924(c) convictions for brandishing a firearm during a crime of violence required a mandatory minimum term of 32 years – 7 years for Count 3 and 25 years for Count 8 – that would run consecutively and in addition to the sentences on the other six counts. *Id.*; *see* Doc. 740 ¶¶ 112, 114-15; 18 U.S.C. § 924(c)(1)(A)-(D).

The Ninth Circuit affirmed Thomas's conviction and 49.5-year sentence. Doc. 691; *Thomas*, 843 F.3d at 1206. Later, the Supreme Court held in *United States v. Dean*, 137 S. Ct. 1170 (2017), that district courts may consider the impact of a sentence imposed under § 924(c) when calculating a just sentence for the predicate count. As a result, the Ninth Circuit vacated Thomas's sentence and remanded for reconsideration. Doc. 697; *United States v. Thomas*, 856 F.3d 624 (9th Cir. 2017). On remand, the Court imposed a sentence of 42 years – the lowest possible sentence in light of mandatory minimums. Docs. 706, 713.[2] The Ninth Circuit summarily affirmed the 42-year sentence. Doc. 722.[3]

Mr. Thomas is confined at the federal correctional institution in Phoenix, Arizona ("FCI Phoenix"). *See* Docs. 732-1 at 6, 736 at 6; Federal Bureau of Prisons, *Find an*

---

[1] Based on a criminal history category of I and a total offense level of 37, which included a two-level enhancement for Thomas's perjury, the Guidelines range was 210 months to 262 months. *See* Doc. 740 at 36-37; *Thomas*, 843 F.3d at 1204.

[2] As noted, the § 924(c) convictions on Counts 3 and 8 mandated consecutive 7-year and 25-year terms, respectively, and Counts 2 and 7 carried mandatory 10-year sentences because the jury found forced accompaniment in the armed robberies. *See* Doc. 488; Doc. 713 at 39-40; 18 U.S.C. § 2113(e).

[3] In May 2021, the Court denied Thomas's civil motion to vacate his sentence under the federal habeas statute, 28 U.S.C. § 2255. *See Thomas v. United States*, No. CV-18-02803-PHX-DGC (ESW), 2021 WL 2105611 (D. Ariz. May 25, 2021), *certificate of appealability denied*, No. 21-15987, 2022 WL 2103982 (9th Cir. Jan. 26, 2022).

3

*Inmate*, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited July 26, 2022). His earliest projected release date is January 16, 2048. *Id.*

On January 21, 2022, he asked the warden at FCI Phoenix for a sentence reduction. Doc. 732-9. The request was denied on February 14, 2022. Doc. 732-10. Defendant thereafter filed this motion under 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, § 603, 132 Stat. 5194 (Dec. 21, 2018). Doc. 732. Thomas seeks immediate release, arguing that his 42-year sentence is excessive and should be reduced to time served. Doc. 732-1 at 6.

**II.    Sentence Reductions Under § 3582(c)(1), the FSA, and the § 3553(a) Factors.**

"District courts can modify prison sentences only in limited circumstances set out by federal statute." *United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022) (citing *Dillon v. United States*, 560 U.S. 817, 824 (2010)). Section 3582(c)(1), as amended by the FSA, "allows certain inmates to seek a form of sentence modification called compassionate release by filing motions to that effect with the district court." *Id.*; *see* FSA § 603(b)(1).[4]

"Under § 3582(c)(1), courts have the authority to reduce a sentence upon the motion of an inmate if three conditions are met: (1) the inmate has either exhausted [his] administrative appeal rights of the [BOP's] failure to bring such a motion on the inmate['s] behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established 'extraordinary and compelling reasons' for the requested sentence reduction; and (3) the reduction is consistent with 'applicable policy statements' issued by the United States Sentencing Commission." *United States v. Burnett*, No. CR17-0029JLR, 2022 WL 2440079, at *2 (W.D. Wash. July 2, 2022) (citing § 3582(c)(1)(A)(i)).[5]

---

[4] "Although relief under § 3582(c) is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." *United States v. Marks*, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020). Thomas does not request that his sentence be reduced by a certain number of months or years, but instead seeks a time-served sentence. *See* Doc. 732-1 at 6, 16-17, 19-20, 23; Doc. 741 at 12-14.

[5] There is no Sentencing Commission policy statement specifically applicable to § 3582(c)(1)(A) motions filed by defendants. The policy statements that apply to such motions filed by the BOP "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d

4

Section 3582(c)(1)(A) "also instructs the court to consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding whether a reduction in sentence is appropriate." *Burnett*, 2022 WL 2440079, at *2; *see United States v. Soza-Soto*, No. 19-CR-684-GPC, 2020 WL 7260663, at *3 (S.D. Cal. Dec. 10, 2020) ("Before determining if release is warranted, the Court must also take into account public safety and the Section 3353(a) sentencing factors.") (citing § 3582(c)(1)(A)(ii)).

### III. Thomas's Motion.

The burden rests with Thomas "to provide proof that [he] has met the exhaustion criteria set forth in § 3582(c)(1)(A) and to establish that 'extraordinary and compelling reasons exist' to warrant [his] release." *United States v. Packard*, No. 19CR3886-H, 2021 WL 4751173, at *2 (S.D. Cal. Oct. 12, 2021). Thomas has satisfied § 3582(c)(1)(A)'s exhaustion requirement because he filed the present motion more than 30 days after he submitted his administrative request for early release. *See* Docs. 732-1 at 12, 732-9.

Thomas contends that the 25-year sentence for his § 924(c) conviction on Count 8 is excessive and therefore constitutes an extraordinary and compelling reason to reduce his sentence to time served. Doc. 732-1 at 6, 12-16. The government counters that Thomas has not established extraordinary and compelling reasons and that the sentencing factors in 18 U.S.C. § 3553(a) weigh against his release. Doc. 736. The Court agrees with the government.

#### A. Thomas Has Not Shown Extraordinary and Compelling Reasons.

Section 924(c) establishes a sentence of 5 years for a defendant's first conviction of possessing a firearm during a crime of violence, which increases to 7 years if the firearm is brandished, as here. *See* § 924(c)(1)(A)(i)-(ii). When Thomas was sentenced, § 924(c) also mandated an enhanced 25-year term for each "second or subsequent conviction[.]"

---

797, 802 (9th Cir. 2021). The relevant policy statement provides that a defendant may be eligible for compassionate release if "extraordinary and compelling reasons warrant the reduction"; the "defendant is not a danger to the safety of any other person or to the community"; and the "reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; *see also id.* cmt. n.1 (outlining four categories of circumstances that may constitute "extraordinary and compelling reasons" for compassionate release – serious medical conditions, advanced age, family circumstances, and a catch-all "other reasons").

5

§ 924(c)(1)(C)(i), Pub. L. 109-304, § 17(d)(3), 120 Stat. 1707 (2006). The Supreme Court interpreted the phrase "second or subsequent conviction" to permit the "stacking" of mandatory minimum sentences for multiple § 924(c) convictions in the same case. *See United States v. Jones*, 482 F. Supp. 3d 969, 978 (N.D. Cal. 2020) (citing *Deal v. United States*, 508 U.S. 129, 132 (1993)); *United States v. Davis*, 139 S. Ct. 2319, 2324 n.1 (2019) ("[A] defendant convicted of two § 924(c) violations in a single prosecution faced a 25-year minimum for the second violation.") (citing *Deal*, 508 U.S. at 132); *United States v. Merrell*, 37 F.4th 571, 573 (9th Cir. 2022) ("[T]he qualifying 'second or subsequent conviction' could arise from the same trial and indictment as the 'first' conviction.") (citing *Deal*, 508 U.S. at 132-37). Thus, a defendant convicted on two § 924(c) counts in a single indictment automatically faced a "stacked" mandatory sentence of at least 30 years (32 if the firearm in the first count was brandished) even if the defendant had no prior § 924(c) conviction. *See id.*; *Burnett*, 2022 WL 2440079, at *6.

The FSA amended § 924(c) to permit "sentencing enhancements for a second or subsequent conviction only 'after a prior [§ 924(c)] conviction . . . has become final'" in an earlier case, thereby abrogating "the *Deal* rule allowing enhancements based on convictions arising out of the same indictment and trial[.]" *Merrell*, 37 F.4th at 574 (citing FSA, Pub. L. 115-391, § 403(a), 132 Stat. at 5221-22); *see also United States v. Voris*, 964 F.3d 864, 873 (9th Cir. 2020) ("Section 403 of the Act amended § 924(c)(1)(C) so that the 25-year enhancement applies only 'after a prior conviction under this subsection has become final.' Thus, the 25-year enhancement no longer applies when all of a defendant's § 924(c) convictions arise in the same proceeding.") (citation omitted); *United States v. Luong*, No. 96-CR-00094-JSW-1, 2022 WL 2072932, at *2 (N.D. Cal. June 9, 2022) ("Section 924(c) . . . now provides that the mandatory minimum terms applicable to subsequent convictions (the 'stacking provisions') are only applicable after a 'prior conviction under this subsection has become final.'") (quoting § 924(c)(1)).[6] But in

---

[6] To be clear, the FSA "did not completely do away with mandatory minimum 'stacking' for first time offenders in the sense that the mandatory minimum for each § 924(c) conviction in the same proceeding must still be served consecutively." *Burnett*,

6

enacting the FSA and its elimination of sentence-stacking, Congress chose not to make the amendment retroactive. The amendment applies only to sentences imposed on or after the date of its enactment, December 21, 2018. *See* FSA, Pub. L. 115-391, § 403(b), 132 Stat. at 5222; *Davis*, 139 S. Ct. at 2324 n.1 ("Congress changed the law so that, *going forward*, only a second § 924(c) violation committed 'after a prior [§ 924(c)] conviction . . . has become final' will trigger the 25-year minimum.") (emphasis added); *Voris*, 964 F.3d at 875 ("Congress . . . expressly limited the retroactive application of § 403."); *Thomas*, 2021 WL 2105611, at *13 ("Congress declined to make the [FSA's] elimination of sentence-stacking retroactive."). Because Thomas was sentenced well before the FSA was passed in December 2018, its amendment of § 924(c) does not apply.[7]

Thomas notes that many district courts have found existing sentences imposed for multiple § 924(c) charges to be harsh enough to constitute extraordinary and compelling circumstances warranting sentence reductions. Doc. 732-1 at 7, 13-15 (citations omitted). Thomas contends that in light of the FSA's elimination of sentence-stacking, his sentence should be reduced to time served. *Id.* at 16-19. The Court does not agree.

Thomas has served only 10 years of his 42-year sentence. *See id.* at 10, 16, 19; Doc. 740 at 2 (noting that Thomas accrued 2.5 years (918 days) of presentence custody as of September 10, 2014). And if Thomas were convicted of the same charges today, his sentence would still be 24 years – 10 years for the conspiracy and robbery charges and 7 consecutive years for each of the two § 924(c) charges. *See* Doc. 736 at 13 & n.6; Doc. 741 at 9. That sentence is more than twice as long as Thomas's requested time-served sentence. *See id.*

---

2022 WL 2440079, at *6 n.11 (citing § 924(c)(1)(D)(ii)).

[7] A circuit split exists over whether, under § 3582(c)(1)(A), courts can remedy overly harsh sentences that do not benefit from the future-looking changes in the FSA. *See United States v. Wells*, No. 2:14-cr-00280-JCMG-WF, 2022 WL 1720987, at *2-3 (D. Nev. May 27, 2022) (discussing relevant circuit court decisions); *United States v. Crandall*, 25 F.4th 582, 585 (8th Cir. 2022) (same). The Ninth Circuit has yet to weigh in on the issue (*see* Docs. 732-1 at 13, 736 at 9-10), and the Court need not address it here because the Court does not find the FSA's elimination of sentence-stacking to be an "extraordinary and compelling reason" warranting Thomas's release from prison.

The Court cannot conclude that the FSA's amendment of § 924(c) is an extraordinary and compelling reason justifying Thomas's immediate release. *See* Doc. 722-1 at 1 (affirming Thomas's 42-year sentence and noting that "mandatory minimum sentencing schemes have been consistently upheld") (citation omitted); *United States v. Stain*, No. 21-10154, 2022 WL 486602, at *1 (9th Cir. Feb. 17, 2022) (affirming the denial of a motion for compassionate release where the defendant had served only 17 years of his 44-year sentence for bank robbery and § 924(c) violations because the sentence previously had been affirmed and the FSA is not retroactive); *United States v. Wells*, 827 F. App'x 664, 668 (9th Cir. 2020) (affirming 107-year sentence for multiple § 924(c) convictions and noting that the FSA does not apply retroactively); *Voris*, 964 F.3d at 873-75 (same with respect to 110-year sentence); *United States v. Crenshaw*, No. 2:90CR117, 2022 WL 1046371, at *1 (E.D. Va. Apr. 7, 2022) (rejecting the defendant's argument that "recent statutory changes to 18 U.S.C. § 924(c) present extraordinary and compelling reasons to justify a reduction in his sentence to 'time served'" where he had "only served 11 years of his 55-year federal sentence"); *United States v. Isom*, No. 1:03-CR-241-1, 2022 WL 1093499, at *6 (M.D.N.C. Apr. 12, 2022) ("Based on . . . the seriousness of the [armed robbery and brandishing a firearm] offenses . . . and the fact that even under the revised § 924(c) scheme Isom has served only half of his sentence, Isom's motion for compassionate release based on his stacked charges is denied as his stacked sentence, in combination with all other factors, is not an extraordinary and compelling circumstance warranting release.").

Thomas's reliance on *United States v. McCreary*, 528 F. Supp. 3d 1083 (D. Ariz. 2021), is misplaced. Doc. 732-1 at 15-16. The defendant in that case had served nearly half of his original 38.5-year sentence when he moved for a sentence reduction, and had served more than three-fourths of his reduced 20.5-year sentence. *See McCreary*, 528 F. Supp. 3d at 1084-85. A time-served release is not appropriate in this case given that Thomas has served less than half of the sentence he would receive under the amended

version of § 924(c). As the government notes, relief under § 3582(c)(1)(A) is both a drastic and permanent remedy. Doc. 736 at 7.[8]

### B. The § 3553(a) Factors Weigh Against Thomas's Release.

Section 3582(c)(1)(A)(ii) "provides that, before reducing a defendant's sentence for 'extraordinary and compelling reasons,' the court must consider the factors set forth in 18 U.S.C. § 3553(a)[.]'" *United States v. Mobley*, No. CR CCB-17-144, 2020 WL 6891398, at *3 (D. Md. Nov. 24, 2020). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013).

Thomas contends that the § 3553(a) factors weigh in favor of his immediate release. Doc. 732-1 at 17. The Court does not agree.

Thomas engaged in the very serious criminal conduct of robbing banks with firearms. He attempts to deflect blame for the robberies, claiming that Brymer was "the primary recruiter and leader of the co-conspirators who performed [two of the] robberies." Doc. 732-1 at 6. But the evidence at trial clearly showed that Thomas played a leading role in each robbery. As the Ninth Circuit explained, he "plotted, organized and facilitated three robberies involving weapons and threats of harm to many employees and bank customers." *United States v. Thomas*, 843 F.3d 1199, 1206 (9th Cir. 2016); *see also* Doc. 740 ¶ 25 (noting that Thomas organized and was directly involved in all three robberies).[9]

---

[8] The Court expresses no opinion on whether a § 3582(c)(1)(A) motion to reduce Thomas's sentence to the 24 years he would have received under the revised mandatory minimums would be appropriate. Thomas has not requested such relief in his current motion and the government has not addressed it.

[9] Thomas notes that his co-defendants have been released from prison (Doc. 732-1 at 6), but they each pled guilty and accepted responsibility for their criminal conduct, and some cooperated with the government and testified against Thomas.

9

Thomas contends that the robberies constitute an "isolated mistake" and an "anomaly in his record." Doc. 732-1 at 17-18. But Thomas also engaged in an extensive scheme to steal customer data from Wells Fargo and use it to defraud his victims of nearly $125,000. *See* Docs. 736 at 6-7, 740 ¶ 81. Thomas ultimately pled guilty to criminal impersonation, a class 6 felony, and was sentenced to an aggravated term of 2 years' imprisonment and ordered to pay $82,515.40 in restitution. *See* Doc. 736-2; Judicial Branch of Arizona, Maricopa County, *Criminal Court Case Information*, http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2012-007304 (last visited on July 27, 2022).

Thomas claims that his decade in prison has helped him accept full responsibility for his "poor judgment[.]" Doc. 732-1 at 20; *see also* Doc. 732-12. As the government notes, however, Thomas proclaimed his innocence for years following his imprisonment. Doc. 736 at 16. Indeed, only two years ago he asserted a claim of "actual innocence," which he "has maintained since the proceedings against him commenced." Doc. 36 at 9, Case No. CV-18-02803. Thomas's claim that he is "deeply remorseful" rings hollow. Doc. 732-1 at 20.[10]

Thomas asserts that the serious nature of his crimes is mitigated by "non-violence," noting that he "never committed any violence or used any firearms." Doc. 732-1 at 18. This assertion conflicts with Thomas's claim that he is a changed man who understands his own wrongdoing and the impact of the robberies on his victims. *See* Doc. 740 ¶¶ 35-41 (discussing victim impact statements).

Thomas's good behavior and rehabilitative efforts while in prison are commendable (*see* Doc. 732-1 at 10, 22), but releasing him at this time would not reflect the seriousness of his offenses, promote respect for the law, provide a just punishment for his serious offenses, or afford adequate deterrence to criminal conduct. The Court finds that the

---

[10] Thomas asserts in his reply that the fact that he "sought post-conviction relief does not mean that he cannot also take responsibility for his actions and show remorse." Doc. 741 at 14. True, but asserting a claim of actual innocence – like his perjury at trial – is not consistent with taking responsibility and showing remorse.

§ 3553(a) factors do not weigh in favor of Thomas's immediate release. *See* Doc. 736 at 14 (noting that Congress has provided that rehabilitation alone is not an extraordinary and compelling reason for release) (citing 28 U.S.C. § 994(t)); *United States v. Peoples*, No. 21-2630, 2022 WL 2825834, at *4 (7th Cir. July 20, 2022) ("Congress took care to state in § 994(t) in clear and precise terms – that the 'rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason' for compassionate release. . . . We cannot read § 3582(c) to permit good prison conduct and rehabilitation alone to override Congress's determinate sentencing scheme."); *United States v. Martin*, No. 1:11-CR-48-2, 2022 WL 706648, at *6 (M.D.N.C. Mar. 9, 2022) ("Martin committed [firearm offenses arising from multiple armed robberies] for which he is serving a long but earned sentence. Because the § 3553(a) factors do not support immediate release, his motion for a sentence reduction to time served will be denied[.]"); *United States v. Straite*, No. 1:11CR321-1, 2022 WL 446048, at *3 (M.D.N.C. Feb. 14, 2022) ("Straite also asks that his 32-year sentence for the stacked § 924(c) convictions be reduced to 14 years and that, combined with his consecutive one-year sentence for the robberies, he receive a sentence of time served. But, Straite has yet to serve the mandatory minimum of 14 years even if he had been sentenced under the First Step Act for his § 924(c) convictions . . . . Thus, a sentence of time served . . . is not sufficient to reflect the seriousness of the offenses, promote respect for the law, or provide just punishment for the offenses."); *United States v. Vaughan*, No. 2:13-cr-00036-JRG-DHI-1, 2022 WL 377830, at *3 (E.D. Tenn. Feb. 7, 2022) ("[Defendant] contends that he would not be subject to 'stacked' mandatory minimum sentences if sentenced today. . . The Court recognizes that Defendant was subject to a more severe punishment regime than exists today. However, Congress has not made Section 403 of the First Step Act retroactive, and on the record before the Court, the sentencing factors weigh against early release.").

Thomas notes that the Court stated at his resentencing that it disagrees with mandatory minimum sentences. Doc. 732-1 at 8. This is correct, but the Court also recognized that "we have mandatory minimum sentences in the federal system and several

of them apply in this case." Doc. 713 at 39. The Court sought to account for the impact of § 924(c) mandatory minimums by reducing the 17.5-year sentence on the non-firearm counts to the minimum of 10 years. *Id.* at 41; *see also* Doc. 736 at 12. Even absent the mandatory minimums, however, the Court would not have sentenced Thomas to the requested time-served sentence of 10 years total – a sentence that would essentially allow Thomas to serve no time for the § 924(c) convictions.

**IV.   Conclusion.**

Because Thomas has not shown extraordinary and compelling reasons, and release at this time would not serve the purposes of § 3553(a), the Court will deny his motion for a sentence reduction.[11]

**IT IS ORDERED** that Defendant Joel Thomas's motion to reduce sentence pursuant to 18 U.S.C. § 1382(c)(1)(A)(i) (Doc. 732) is **denied**.

Dated this 2nd day of August, 2022.

*David G. Campbell*
David G. Campbell
Senior United States District Judge

---

[11] Given this ruling, the Court need not determine whether Thomas is still a danger to the community. *See* Docs 732-1 at 21-22, 736 at 17, 741 at 15; *Stain*, 2022 WL 486602, at *1 ("A district court may deny a motion for compassionate release based solely on its analysis of the § 3553(a) factors.") (citing *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021)).